Brockenbrough, J.
I think there can be no doubt, on the finding of the jury, that the sale from John Adams to Ish was a fair and bona fide transaction, and for valuable consideration. Possession, too, accompanied the bill of sale; for at the time of its execution, the slave was delivered to the vendee at his own house. On the same day, however, there was a redelivery of the possession to the vendor on a contract of hiring; and this possession of- the vendor would seem to be inconsistent with the deed, and notwithstanding the apparent fairness of the contract for hiring, would, I think, bring it within the rule of Edwards v. Harben, and render the rule void as to the creditors of John Adams, who should levy an execution on the slave during the continuance of such possession of the vendor. But it would not render it void as to creditors at large, but only as to those whose rights attached during such possession of the vendor. If, in this case, the execution of Richard Adams had been put into the hands of the she *327 riff, a,t any lime previous to the 11th November 1822, when the deed of trust was executed by Ish, the purchaser, to Beveridge, I should think that the creditor’s right would prevail, and that the sale to Ish, and the conveyance by him to the trustee Beveridge, would be void as to that creditor. But the question here is varied by the act of the vendee in executing the deed of trust. I consider the act of making that deed as a resumption of the possession by the vendee. Tt was a distinct act of ownership by him, before the creditor, Richard Adams, had acquired any lien on the property of his debtor, or had acquired any right to levy on it. In this point of view, the case is completely within that of Sydnor v. Gee. In that case, Clausell, the vendee, had hired the slaves to Baptist, on the same day that he purchased them, but took possession of them again at the end of the period for which they had been hired. The court decided, that the creditor, who recovered judgment after the resumption of the possession, by the vendee, had no right to levy his execution on those slayes. Judge Cabell, who was of opinion, that notwithstanding the luring the case would have come within the rule of Edwards v. Ilurben, but for the resumption of possession, concurred with the other judges in supporting the right of the vendee, on the ground that he took possession before the rights of the creditor attached. In this case, Ish had under the contract of hire, a right to resume the possession of the slave on the 1st January 1823, and then to sell him, or give him away. A short time before the contract ended, he executed and delivered to Beveridge the deed of trust. As between Ish and John Adams, the possession of the latter was at that time the possession of the former, and the right of the creditor had .not then attached. So that Ish being in possession executed and delivered the deed, which transferred the possession to the trustee. That deed was for a bona fide and meritorious consideration, and *328 being properly recorded, gave notice to the creditors of the vendor, that it was the property of the trustee for the use of the beneficiaries, under the deed. Suppose that on the 14th December 1821, when John Adams sold and delivered the slave to Ish at the house of the latter, the vendee Ish had forthwith executed the deed of trust, and had it recorded on the same day, and with the consent of the trustee, had immediately after permitted Adams to carry the slave to his own house, for the benefit of his wife and children; would that transaction have been fraudulent as to the creditors of Adams ? I think not. There was a bona fide sale for valuable consideration, and a possession accompanying the deed by which the sale was evidenced. Ish, at that moment, had absolute dominion over the property, and he had a right to give it away for the benefit of his daughter and grandchildren, and by way of securing it to them,- to convey it to a trustee. The husband and wife living-together, there could be no fraud in the trustee’s permitting the husband to carry the property to his own house, for such a possession is entirely consistent with the deed of trust; and the creditors in general of Adams would have no right to complain, because the recording of the deed of trust would be constructive notice to them, and to the world. The recording would stand in the .place of the continued separate possession of the vendee, or of the trustee to whom he conveyed it. Now, I see'no difference between the supposed case and the one before us, if the relative situation of John Adams and his creditor remained the same. It did remain the same. Richard Adams was a creditor at large of John Adams on the 14th December 1821, when the sale was made to Ish, and on the 11th November 1822, when Ish executed and recorded the deed of trust,, He had obtained no lien by judgment, execution or otherwise, in the intermediate space of time. I look upon the execution of the deed of trust on the last mentioned day as *329 equivalent to a resumption of the possession by Ish, and that the rights of the parties were the same as they would have been on the day when the contract of sale and the delivery took place.
The next objection is, that the action is carried on in the name of the sheriff, and the name of the relator does not appear in any part of the pleadings; neither in the declaration, nor in the writ. It does seem to me, that this is an objection which ought not to be tolerated in the appellate court. The statute says, that the claimant of the property “ may, in the name of the high sheriff, prosecute his or her suit upon the bond, and recover such damages as a jury may assess.” Here is a suit carried on in the name of the high sheriff, and the declaration, after reciting that a certain William Beveridge, trustee for Lucinda Adams and her children, claimed title to the slave which had been taken in execution, and was injured by his seizure and sale to the extent of 600 dollars, charges the breach of the bond to consist in the non-payment of the damages to Beveridge. What reason does the record exhibit to prove that Beveridge did not prosecute the suit ? The statute, whilst it authorizes the claimant to prosecute the suit, does not require that his name should appear as the prosecutor, but on the contrary directs, that it shall be carried on in the name of the sheriff; and this is strictly complied with. All that is necessary is, that the court before which the trial takes place, should see that it is the claimant of the property who carries on the suit. This is a fact which lies in averment. It is one which might be made to appear in the court of trial, at any time that either party chose to have it spread on the record. Did the defendant wish to know who was liable to him for costs, in case the judgment should b.e in his favour, or to whom he was to pay the money, in case the judgment should be against him ? He had nothing to do, but to apply to the court for a rule on Beveridge, *330 or on the sheriff, to shew cause why the suit should not be dismissed, for want of the name of the relator who was prosecuting the suit. The court must have granted the rule, and the suit would either have been dismissed, or the name of the relator spread on the record. Having omitted to do this, and the cause having gone to trial 'on the merits, and there being no defect in the pleadings, they being carried on in the name of the officer in whose name the law says they shall be conducted, I think it is too late for the objection to be made here. If we affirm an erroneous judgment, on account of this omission, we shall sacrifice justice, in behalf of one of the parties who was guilty of neglect equally with the other. This does not seem to be like the case of Cabell v. Hardwick. In that case, the declaration was in the name of certain individuals, without styling them justices ; the bond offered in evidence was one executed to them as justices-: there was. a variance between the allegata and probata, and the evidence was excluded. But that case is not apposite to this; because here, the declaration is in the name of diaries Lewis sheriff of Loudoun county, not merely in the name of Charles Lewis; and the allegata and probata here do agree.— The special verdict shews, that the jury considered Beveridge as the plaintiff, and as the verdict was prepared by the counsel on both sides, or at least by one party under the superintendance of the other, and the supervision of the court, there can be no doubt, that the court, the bar and the parties, all considered the sheriff as the nominal, and the trustee the real plaintiff. I refer to that part of the verdict which finds that on the 11th November 1822, Ish, for the consideration therein named, executed and delivered “to the plaintiffj” the deed of trust. What plaintiff? Certainly not Charles Lewis sheriff of Loudoun (for he was as much a stranger to the transaction as any other man), but Beveridge, the grantee in the deed. Then, Beveridge was consi *331 dered by the jury as the real plaintiff. Therefore, I think that independently of the statute of jeofails, this omission is not such an one as would have reversed the judgment, if the judgment had been for the plaintiff, as it ought to have been on the merits. But that statute makes it perfectly clear. “ No judgment after the verdict of twelve men shall be stayed—ior omitting the averment of any matter without proving which the jury ought not to have given such verdict.” I know that this clause does not cure the omission of an averment of the gist of the action. But such is not the case here. The gist of the action is averred in the declaration: that consisted in the assignment of the breach in not paying to Beveridge the damages sustained by him, by the sale of his property under an execution against another. The omission is, merely, of the name of the person who prosecutes the suit; and who he is may bo fairly inferred from the breach assigned. Unless it was proved to the satisfaction of the jury, that Beveridge was that person, they ought not to have given the verdict, and the omission of that averment should not therefore have stayed the judgment. • The court below was of opinion, that on the merits, the judgment should be for the defendant, and so entered it. If this court is of a different opinion on the merits, we ought not to stay the judgment which should have been given: and for that reason, I am of opinion, that the judgment which was given, should now be reversed, and the proper judgment entered.
It is further objected, that by the deed the slave is conveyed to the trustee, not for the sepa,rate use of the wife, but only in trust for her and her children, and her interest in the slave enured to the benefit of the husband. It seems to me, that the object of the deed is manifestly to vest in the trustee the legal estate, exclusively for the benefit of the wife and children, independent of all control of the husband, and that he had no interest legal or equitable in the slave. But if I am *332 wrong in this, still the husband’s interest could only be an equity, and according to the decision of this court in Claytor v. Anthony, 6 Rand. 285. and Leslie’s ex’or v. Briggs, 5 Leigh 6. that was not such an interest as could be levied on by a fieri facias. The seizure and sale of the slave was therefore unlawful, and subjected the obligors in the indemnifying bond to the action of the trustee, in the name of the sheriff.
I am for reversing the judgment, and rendering one for the plaintiff for the damages assessed by the jury, and for the costs in both courts.
Carr, J.
This is a suit in the name of the sheriff on an indemnifying bond given to him under the statute, for the sale of a slave taken by him in execution, and claimed by a third person. From the facts found, I have no doubt, that the sole question meant to be raised by the special verdict, was, whether the bill of sale from John Adams to Ish, was not fraudulent under the rule of Edwards v. Harben. That question is, I think, settled by the case of Sydnor v. Gee. There, under circumstances, which, if not identical, so closely resemble these as to be governed by the same principle, the court held the case clear of the rule, and the deed- valid. Upon this point I do not think it necessary to say more.
It was insisted in the argument, that this court, though we should differ with the court below on the question of fraud, must affirm its judgment, on another ground, viz. that neither in the writ nor the declaration, is there any person named as a relator, but the suit is carried on solely in the name of the sheriff. The statute declares, that if a sheriff levy an execution on property, and a doubt arise whether the right of such property be in the defendant, the sheriff may apply to the plaintiff for bond &c. payable to the high sheriff and conditioned to indemnify him, and moreover to pay and satisfy any person claiming title to such property, all damages *333 which he may sustain, in consequence of such seizure i t ii -i .. i and sale; and such -person, may, m the name ot the high sheriff, prosecute his suit upon the bond, and recover such damages as a jury may assess. This law, it will be observed, no where requires, that the name of the claimant shall appear upon the record. It could not appear as plaintiff, because there can be but one plaintiff on the record. The bond is given to the sheriff, and the law expressly declares, that the suit shall be in the name of the sheriff. The declaration, in the case before us, is in the name of Charles Lewis sheriff of Loudoun: it sets out the bond with the condition, and shews, with clearness and precision, that the execution was levied on a slave claimed by Beveridge; that the bond was given to secure to Beveridge such damages as he should sustain by such levy; that Beveridge had thereby sustained damages; and that the suit is brought to recover those damages. Shall we conclude, that this suit is brought by the sheriff of his own mere motion, and for his own profit, because it is in his name, when the law has given him no such action ? Or shall we say, that it is brought by Beveridge, whose case it sets out, whose damages it claims, and to whom the law has given the action in the sheriff’s name ? Clearly the latter ; and to my mind so clearly, that I could hardly feel more assured of the fact, if his name were written as relator in every page of the record. It is plain to me, from several passages in the record, that this matter was understood by all parties in the court below. In making up the special verdict, we know that the counsel on each side, the jury and the court, all have part; it is the joint work of them all. In this verdict, the jury finds that on the 11th November 1822, Ish executed and delivered “ to the plaintiff,” the deed of trust set out in the verdict, from Ish to Beveridge; thus clearly shewing that all knew Beveridge to be in fact the plaintiff,—the person carrying on the suit in the sheriff’s *334 name. Again, in certifying the record, the clerk styles t 4 _ - # # it a true transcript of the record and proceedings m the action of debt lately depending between Charles Lewis sheriff, at. the relation of W. Beveridge, trustee for Lucinda Adams and her children, plaintiffs, and Richard Adams and R. H. Henderson, defendants. Taking it .that, in truth and in fact, this suit was prosecuted, by the agency and for the benefit of Beveridge as trustee, what mischief can result from his not being named in the declaration as relator ? Can he after this recovery bring another suit as relator ? If he should attempt it, I have no doubt, that he might be barred by averring and proving that this suit was his. But if this omission in the declaration was so serious a fault, why did not the defendants demur ? that was their legal and obvious course, if they meant to take advantage of the defect. Instead of this, they have pleaded conditions performed,; that is, that they had paid to Beveridge all damages which he had sustained, or that he had sustained none; thus admitting the sufficiency of the declaration, and putting their defence on the facts of the case. And now, after trial, verdict, judgment and appeal, they come here to take advantage of this sleeping and formal error, if indeed it be an error at all. I think they are too late. Our statute of jeofails says, “that no judgment after the verdict of twelve men, shall be stayed or reversed, for any defect whatsoever, in the declaration or pleading, whether of form or of substance, which might have been taken advantage of by demurrer, and which shall not have been so taken advantage of.” This defect might have been demurred to, but was not, and a verdict has passed. The case, therefore, is certainly within the letter, and to my mind equally within the policy and mischief, of the statute. Legal defects in the pleadings must be objected to in due time, as well as in proper manner. A demurrer to the declaration stops the cause in limine, if sustained. *335 This declaration was filed in 1827; the cause has been travelling on, ever since, at the expense of the time, trouble and money of the parties, and now in 1835 in the court of appeals, the objection is made, to reverse all that has been done. This is a mischief which the statute meant to prevent; and which is well worthy of our attention.
It was further objected, that the property in the deed of trust, not being conveyed to the separate use of the wife, but simply to the use of the wife and children, her interest would enure to the husband, and might be levied on by his creditors. I think not. Whenever a gift is made to the wife during coverture, even by a stranger, if it appear, by any circumstance, that the intention of the donor was that she should have it to her separate use, equity will give effect to this intention, and hold the husband her trustee. See Graham v. Londonderry, 3 Atk. 393. and West v. West’s ex’ors, 3 Rand. 373. and the cases there cited. In Scott & wife v. Gibbon & Co. 5 Munf. 90. upon a deed conveying property to a trustee, for the use of the husband and wife, jointly, during their lives, the property was considered as not liable to the creditors of the husband, because it would violate the clear intent of the deed. In our case, the deed is made to the trustee, not for the use of the husband at all, but in trust for the daughter of the grantor, and all her children. Now, would not this trust be most clearly violated, and the intention of the grantor wholly frustrated, by suffering executions against the husband to be levied on this joint provision for the wife and children ?
I am of opinion, that the judgment be reversed, and entered for the damages assessed for the plaintiff with costs &c.
Cabell, J.
1 am of opinion with the judges who have preceded me, that it sufficiently appears in there- *336 cord, that the action, though in the name of the sheriff, was for the benefit of Beveridge; and that, consequently, the objection as to the want of a relator, is without foundation. But I think, that upon the merits of the case, as disclosed by the special verdict, the law is for the defendant.
It was said, in the argument, that this case is ruled by Sydnor v. Gee. In that case, there was an absolute bill of sale, for fair and valuable consideration, accompanied by a delivery of possession to the vendee, who immediately hired the slaves for fair and valuable consideration to the vendor, and restored the possession to him. Thus far, that case is precisely like this; and if there had been nothing else in it, the decision there would be a direct authority in the case before us. But the decision of the court, in the case of Sydnor v. Gee, did not turn on these circumstances. There was another most important fact in the case; namely, that the vendee had resumed the possession, and kept it for a long time, before the right of the creditor attached. Four judges sat in that case; and we were all in favour of the vendee. The president and judge Carr were of opinion, that as the original sale was fair, and attended by actual delivery of possession, the case did not come within the influence of the rule of fraud per se, notwithstanding the possession was immediately restoz'ed to the vendor; such restoration of possession being in consequence of a bona fide hiring of the slaves, by the vendee to the vendor, for valuable consideration: and they decided for the vendee on this ground. But, as I have said, there was another important ingredient in the case— the resumption of possession by the vendee before the right of the creditor attached. Judge Carr, was in favour of the vendee, on this point also. The president expressed no decided opinion upon it. Judge BrooJce was also in.favour of the vendee, but did not express the grounds on which he had come to that conclusion. *337 I ha,ve understood from him, that his opinion turned on the resumption of possession. Mine certainly did, and that exclusively, as will appear from the report of the case. If I am correct in this statement of the case, Sydnor v. Gee is no authority for the proposition, that where the sale has been in fact fair, the case is taken out of the rule of fraud per se, by a bona fide bailment or hiring by the vendee to the vendor, for valuable consideration ; two judges only of the five that constitute this court, having expressed such an opinion. Such a proposition has not, in my humble judgment, the countenance of a single decision of the courts of Westminster hall, and is, I think, directly contrary to the decision of this court in Williamson v. Farley, Gilm. 15. a case which, as I well remember, was most gravely considered by the court. It is true, that the fact of the possession remaining with the vendor may be explained, so as to take it, in some cases, out of the rule; but I have never known any explanation to be received as sufficient, where the possession remained for the use of the vendor, however fair the contract by which he was allowed to retain it, and even although it may have been for a valuable consideration. A possession remaining with the vendee for his use, by consent of the vendor, must always be inconsistent with an absolute deed for the use of the grantor. It is not, however, my intention to go into the doctrine generally, having expressed my opinion upon it, at great length, in Land v. Jeffries, 5 Rand. 211. to which I refer. In the present case, however, the vendee, before the end of the year, for which the slaves were hired to the vendor, and before the right of the creditor had attached, conveyed them by deed oí' trust, to the real plaintiff in this suit: and it is contended, that this circumstance is equivalent to the resumption of the possession by the vendee in Sydnor v. Gee; especially, as that deed was put upon the public records. I cannot think so. Possession is the indicium *338 of the title to personal property. The resumption of it by the vendee, would be an act of notoriety; and would give notice, so far as mere possession can give it, that the property no longer belonged to the vendor. But that is not the case, where a deed of trust only is executed by the vendee, the possession having been long before, being then, and continuing always after, in the vendor. What notice could such a deed, under such ¿ircumstances, give to creditors or purchasers, as to the real ownership of the property ? What notice could the deed of trust executed by Ish, the .vendee, in this case, give ? He had never been seen in possession, except by the witnesses to this secret deed. Who that wdshed to know the situation of the property, would have thought of searching the record for a deed, in his name, rather than in the name of any other man in the county of Loudoun? I shall make only one other remark. The real fairness of the transaction never enters into the consideration of a case under the rule of fraud per se. No transactions were ever fairer than those in Edwards v. Harben, and Williamson v. Farley. It is the tendency of the transaction to deceive and defraud creditors, that is mainly looked to; and the law imputes fraud to a person knowingly engaging in a transaction having such tendency. This consideration is, in my opinion, decisive of this case. I think the judgment should be affirmed.
Brooke, J.
The pleadings in this case are too defective, to render it necessary to say any thing of its merits. In every case, in which it is permitted by statute to sue in the name of a public officer, it is as essential that there should be a relator named in the pleadings, who is entitled to sue, as, in other cases, that there should be a plaintiff claiming the right to the thing in controversy. Thus, in a suit on a sheriff’s or executor’s or administrator’s bond, or a bond of indemnity taken *339 by a sheriff, though the suit is in the name of the governor, the justices, or the sheriff, it is essentially necessary, that the party for whose benefit the suit is brought, should be named in the pleadings, as the rolator; otherwise, as the judgment must be in pursuance of the pleadings, and the nominal plaintiffs are in no manner interested, and are not subject to the costs, there would be no plaintiff against whom judgment could be rendered; unless, indeed, the nominal plaintiff will make himself the real plaintiff, as in the case before us, and thereby subject himself to costs, though not being the party injured and entitled to sue, no judgment can be rendered for him. In the pleadings in this case, Beveridge the trustee in the deed of trust is no where alleged to be the relator. It cannot be said that the recital of the deed of trust (in which he is named as the trustee) in the declaration, would make him a relator, and subject him to the judgment of the court; nor can it be said, that any thing in the special verdict, can make one a party in the cause who is not a party in the pleadings. As to the certificate of the clerk that he wa.s the relator, that has been given since the judgment, and was not a part of the proceedings in the cause before the circuit court, whose judgment we are reviewing. I think the judgment must be affirmed.
Tucker, P.
Believing as I do, that this transaction, as disclosed by the special verdict, was neither fraudulent in fact nor in law, and that the case of Sydnor v. Gee places that matter beyond doubt, it is with very great regret, 1 feel myself compelled to affirm the judgment, upon what may seem to be mere matter of form, though upon all correct principles it is essentially matter of substance. I refer to the omission to set forth, a relator, either in the writ or declaration.
I consider it to be almost self-evident, that the sheriff could not have maintained this action on his own mere *340 motion or for his own benefit. Wherever a statutory bond is given to an official person, for the benefit of such persons as may be injured by the misconduct of the obligor, or by his failure to perform the duties required of him, the obligee cannot sue without setting forth a relator: he cannot sue for his own benefit, since the bond was not designed for his benefit, nor can he assert the demand of a third person except at his instance. Thus, a suit on the sheriff’s bond by the.governor, could not be maintained without naming a relator, for the governor has no right to a recovery for himself, of the amount of a bond which was executed for the benefit of others', and is authorized only to be sued for by them. So of an administration bond: no action would lie upon it, unless at the instance of a party injured, for the justices themselves have no right to the recovery. These principles are believed to be among the very elements of the law, and rest upon the most obvious reasons. They are recognized by the case of Cabell v. Hardwick, 1 Call 345. in which it was decided, that in an action brought upon an administration bond by the. obligees, without styling the plaintiffs justices, the administration bond could not be introduced as evidence, as the style of the action indicated a private demand of the obligees, whereas the bond was, in truth, an official bond enuring to the use of others.
Pursuing these principles, it is clear, that this action cannot be sustained by Lewis for his own benefit. For it is a statutory bond, provided for the benefit of others *, the statute declaring, that any person claiming the property taken in execution, may in the name of the sheriff, sue upon the bond, and recover such damages as a jury shall assess. Moreover, as the bond is given to -indemnify the sheriff, and to pay damages to the person claiming the property, it is clear that the sheriff at least cannot sue till he is damnified; and as by law he cannot be damnified, but in the event of the obligors *341 becoming insolvent, and as their insolvency can onJy be legally ascertained by suit upon the bond, it seems necessarily to follow, that the sheriff never can sue upon the bond, but that, like the administration bond, it is to be considered as an official bond enuring to the use of others, which they alone can put in suit. It would be strange were it otherwise. If the sheriff could,,in his own name and for his own benefit, recover upon this bond, or even recover upon it for the benefit of Beveridge, without Beveridge’s privity or concurrence, then it would follow, that the sheriff might thus recover Beveridge’s money, and if he failed to pay it to him, Beveridge would be without remedy on the bond, for it would be satisfied by the judgment obtained by the sheriff, if that judgment be a valid one. And thus Beveridge’s express remedy under the statute would be taken away, and in the event of the sheriff’s insolvency, his demand would be wholly lost. Indeed, it is an absurdity in the law, to permit one man to sue for another’s demand, w ithout his concurrence. For non constat that he wished to assert his claim. Suppose he is willing to abandon it,—to acknowledge the creditor’s rights, or to waive the assertion of his own. Does it lie for the sheriff to assert them against his wishes or without his assent? Assuredly not. So that we arrive, I think, at this certain result, that an action could not have been brought on this bond by the sheriff for his own use, or for the use of Beveridge without his assent. If so, then the question is, whether this assent must not appear? in other words, whether, in all cases, where an action is brought upon an official bond for the benefit of a party injured, he must not be named as relator ? Now the affirmative answer to this question is but a corollary from the principle itself; for, if the sheriff may sue at the party’s instance, but cannot sue without, and if it should appear in the declaration itself whether the plaintiff has or has not a right to sue, it must of course *342 appear there, whether he did or did not sue at the instance of the party injured. In other words, there must he a relator named in the declaration. The defendant is only bound to answer him whom he has injured; and if he even answers another, who asserts, unauthorizedly, the rights of the party injured, he cannot be liable to judgment. For the court cannot give judgment to one man for the rights of another, nor compel the defendant to pay damages to a plaintiff whose judgment will offer no bar to another action for the same damages by the party injured. Accordingly, it has been expressly decided by this court, in Cabell v. Hardwick, that in an action upon an administration bond, the pleadings ought to state for whose benefit the suit was brought. There seems indeed, to have been some difference, as to the absolute necessity of its appearing in the declaration, and whether it would not be sufficient in the replication ; but, I think, upon principle and upon the established practice, it must be set forth in the declaration. The relator is, in fact, the real plaintiff. He only is entitled to the recovery; against him only can the defendant have his judgment for costs; and for both reasons, the court should see distinctly by the declaration (whose office it is to set forth the demand, and the right in which it is made) who is the real plaintiff
The declaration in this case is, in this regard, altogether defective. Though the demand for damages is on account of an injury done to Beveridge, the court does not know, and cannot know, that the action is at his instance, or with his assent; nor does it know, that the damages when recovered, will be paid over to him. There is nothing in the record which could shew a right in him to the money, upon a return of “ ready to render,” and thus the officer may pay it over legally to a person not entitled. I am of opinion, that the judgment must be affirmed.
*343 After these opinions had been delivered by the judges, Johnson procured a certificate from the clerk of the circuit court, which was filed by consent of counsel, to have such effect as the court should think the facts therein stated might be entitled to; whereby it appeared, that the declaration was indorsed, “Lewis sheriff (use of Beveridge, trustee for L. Adams &c.) v. Adams & al.” that in the subpoenas for witnesses, which were issued in the course of the proceedings, a.nd in the appeal bond, the parties were named in the same manner; that there was also an order entered by the court, which, with the caption in the order book, was thus—“ Charles Lewis sheriff (use Beveridge, trustee for L. Adams &c.) v. R. Adams and R. H. Henderson—This day came the parties by their attorneys; and’by consent, the plaintiff filed his declaration, and the defendant pleaded conditions performed, to which the plaintiff' replied generally, and the trial of the issue is deferred &c.” and that there was another order entered by the court in the cause, under the same caption.
Upon reading this certificate, Brooke, J. adverting to the contents of it, said, he thought it would be too strict, in this peculiar action under the statute, to affirm the judgment, on the ground stated in his first opinion; and that, as he concurred with the majority of his brethren on the merits, lie thought it would be best to reverse the judgment, and remand the cause for further proceedings. And Brochenbrough, Carr and Cabell, J. acceding . to this proposition, the judgment wms accordingly reversed, and the cause remanded &c.